PATTERSON, Acting Chief Judge.
A.D., the father, appeals from a final judgment terminating his parental rights to his son, S.D. Because appellee HRS failed to meet its burden of proof, we reverse and remand for further proceedings.
HRS filed a dependency shelter petition on February 19, 1998, seeking shelter for the minor child, S.D., bom July 31,1991, and his half-sister, A.W., based upon allegations of neglect against the mother, who is not a party to this appeal.[1] The father was not residing with the mother at the time the children were removed because he had physically abused A.W., resulting in criminal charges.
On March 29, 1993, the trial court entered an order of adjudication of dependency, and on April 20, 1993, the father and HRS entered into a performance agreement regarding S.D. The performance agreement (now referred to as a “case plan” pursuant to chapter 39), required the father to perform nine tasks to be reunified with the child. The nine tasks are, in essence, as follows:
(1) completion of an abuse counseling program and its recommendations;
(2) completion of a psychological evaluation and its recommendations;
(3) completion of a parenting program and demonstration of proficiency in parenting skills;
(4) evaluation for anger management and follow recommendations;
(5) evaluation for individual counseling and follow recommendations;
*1100 (6) monthly contact with HRS;
(7) follow reasonable requests and recommendations of the supervising counselor;
(8) provide HRS a list of relatives, their addresses, and phone numbers; and
(9) maintain adequate housing and demonstrate financial ability to provide for the child.
By order dated May 4, 1993, the trial court accepted the performance agreement, which had a goal reunification date of August 31, 1993. The “Judicial Review Social Study Report/Case Plan Update” (case plan update) dated September 3,1993, extended the reunification goal date to February 28, 1994. A judicial review order of March 10, 1994, extended the performance agreement to August 31,1994.
On July 29, 1994, a case plan update was filed which indicated that the reunification goal of the father and child was to be accomplished by February 28, 1995. The update also indicated that the father was visiting with the child on Wednesdays in Naples, and on Saturdays at his home in Fort Myers, that overnight and weekend visitations were forthcoming, and that the father had made payments toward child support. The update also stated:
[The father] has a positive home study. [The father] continues to work with Bright Horizons regarding parenting. He continues to learn and to put into use suggestions and new information. He is meeting [the child’s] medical needs by giving him breathing treatments and medication, learning about asthma and having a plan if [the child] has an asthma attack. We are helping him financially to fix his air conditioning[;] he decided to wait to have overnights until this can be accomplished. He needs to find school and day care placements. The family has been referred by Family Rebuilders in Ft. Myers. As overnights begin and weekend visits progress with input from the eounselor[,] this will indicate the speed at which [the child] can return home to live with his father.
Moreover, the update indicated that the father had fully complied with the nine tasks requested of him pursuant to the performance agreement. A judicial review order on August 26, 1994, stated that the father had “substantially complied.” The order also provided for a reunification goal date between father and child of February 28,1995. On October 6, 1994, HRS filed a motion for change of custody, stating that the father had substantially complied with all his court-ordered tasks pursuant to the performance agreement and requested reunification between the father and child.
A letter to HRS counselor Ellen McKinney from the Family Rebuilders Program, dated October 13, 1994, recommended that reunification be delayed for thirty days as a result of the father’s disclosure of two physical confrontations in which he had been engaged. This letter does not indicate whether the father was the aggressor or the victim. Additionally, the letter stated:
It appears that [the father] has had a relapse in regard to engaging in violent behavior which relates to the original reason for removal of [the child]. We consider [the father] bring[ing] this to our attention as his need for more time since this occurred within a week of the scheduled reunification. [The father] has cooperated with us and has begun to trust us more the longer we have worked with him and we continue to regard reunification as the goal. We consider this, at this time, a minor set back.
A second letter from Family Rebuilders, dated November 3, 1994, recommended that the father’s visits be changed from weekends to day visits to reduce the number of unsupervised hours that the father was to have with the child. The letter explained:
[The father] claims to control his anger by burying it. It has been my experience that buried anger is released periodically, as blind fury. [The father] has just recently begun to see the connection between controlling his anger, therefore burying it, and the negative results of this technique.
I would also recommend that reunification take place no sooner than 90 days from the present time, as this work with [the father] will take at least 90 days, if not more.
*1101 The letters were generated as a result of the father’s disclosure to Family Rebuilders of two physical altercations. The first of the two altercations involved the father and his brother. The father was residing with his brother at the time, and the father moved from his brother’s residence shortly after the altercation. The second of these altercations apparently took place at a bar or tavern.
On November 22,1994, HRS filed a motion for change of goal, requesting that the father’s rights regarding the child be terminated because he had “failed to benefit from services in a reasonable length of time.” Pursuant to HRS’s progress review filed on November 22,1994, the reasons for changing the goal from reunification to termination of parental rights were as follows:
(1) the father does not have an appropriate home free of violence;
(2) the father has not made approved and appropriate child care arrangements;
(3) the father has not agreed to a more in-depth substance abuse evaluation as recommended by Family Rebuilders; and
(4) the father has not paid child support since March 1994, and is in arrears $3,352.
On December 19, 1994, HRS filed a petition for termination of the father’s parental rights, alleging that the father had failed to substantially comply -with and benefit from the tasks of his performance agreement. Trial was held on March 28, 1995. HRS counselor McKinney testified at trial the the reason for seeking termination of parental rights was the father’s failure to comply with the performance agreement. McKinney admitted that as late as November 16,1994, she authored a progress review which indicated that the father had “substantially complied with most of his tasks.”
The trial court entered an order terminating the father’s parental rights on April 17, 1995. In its order terminating parental rights, the trial court stated that HRS “has proved by clear and convincing evidence the elements of Section 39.467, Florida Statutes (1995).” Section 39.467 requires that each of the elements of section 39.4611 be established by clear and convincing evidence. In turn, section 39.4611(5), Florida Statutes (Supp.1994), requires:
Whenever the department has entered into a ease plan with a parent with the goal of reunification, and a petition for termination of parental rights based on the same facts as are covered in the case plan is filed prior to the time agreed upon in the ease plan for the performance of the case plan, the petitioner must allege and prove by clear and convincing evidence that the parent has materially breached the provisions of the ease plan.
Here, HRS did not prove by clear and convincing evidence, as the facts now exist in the record, that the father materially breached the provisions of his performance agreement/case plan. In November 1994, HRS considered the father to be in substantial compliance and in October had filed a motion for change of custody to the father. After learning that the father had been involved in two physical confrontations, HRS changed its goal to termination, before the planned reunification goal date of February 28, 1995. HRS concedes in its brief that the father completed most of the tasks under the performance agreement, and that until the incidents of violence, the goal remained reunification. While it appears that the father has an “anger management problem,” the father disclosed the fights to Family Rebuilders and a letter from Family Rebuilders described his problem as a minor setback and suggested delaying reunification.
We are mindful that the child has been in foster care for almost three years and is entitled to stability; however, we must reverse the order terminating parental rights based on the record before us. By this opinion we do not suggest that the child should be reunified with the father, but that HRS failed to meet its burden of proving its case by clear and convincing evidence. On remand, the child should remain in foster care while the father and HRS make additional efforts to resolve the dependency issues. In the alternative, HRS may wish to seek termination based on additional facts not contained in our record.
Reversed and remanded.
*1102 WHATLEY, J., concurs.
ALTENBERND, J., concurs specially.

. The mother’s parental rights to both A.W. and S.D. have been terminated and she has not challenged the terminations. The father of A.W. has also had his parental rights to A.W. terminated.